**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000949
05-AUG-2019
07:48 AM**

NO. CAAP-15-0000949

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

WINDWARD CHRISTIAN CHURCH, previously known as First Baptist
Church-Windward, and ALAN BROWN, Plaintiffs-Appellants,
v.
ONE LOVE MINISTRIES, BOB HAMILTON, DAVID TIPTON, KALO TV, INC.,
Defendants-Appellees,
and
JOHN AND MARY DOES 1-10, DOE CORPORATIONS, PARTNERSHIPS OR OTHER
ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2905)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Hiraoka, JJ.)

Plaintiffs-Appellants Windward Christian Church, previously known as First Baptist Church-Windward (**WCC**) and Alan Brown (**Brown**) (collectively, **Plaintiffs**) appeal from the Judgment (**Judgment**) in favor of Defendants-Appellees One Love Ministries (**One Love**) and David Tipton (**Tipton**) (collectively, **Defendants**) entered by the Circuit Court of the First Circuit (**Circuit Court**)[1] on November 25, 2015. Plaintiffs contend that the Circuit Court erroneously granted summary judgment in favor of Defendants. For the reasons explained below, we affirm the Judgment.

---

[1] The Honorable Gary W.B. Chang presided.

## I.

Plaintiffs' complaint was filed on October 30, 2013. WCC claimed to be a non-profit church that employed Brown, a church member, as a custodian. One Love was alleged to be a Hawai'i corporation that attempted to obtain WCC's assets by dissolution or merger. Tipton was alleged to be the founder and pastor of One Love. The complaint described claims for tortious interference with prospective economic advantage, intentional or negligent infliction of emotional distress, and violation of the Hawai'i Whistleblowers' Protection Act (Hawaii Revised Statutes (**HRS**) Chapter 378, Part V (1993)).

Defendants moved for summary judgment on July 28, 2015. The motion was supported by a declaration and exhibits. Plaintiffs' memorandum in opposition, also supported by a declaration and exhibits, was filed on September 3, 2015. Defendants' reply memorandum, which included another declaration and additional exhibits, was filed on September 8, 2015. The motion was heard on September 11, 2015; the circuit court continued the hearing until October 30, 2015, to allow the parties to file supplemental briefs. It appears that the court was concerned about whether the Defendants employed Brown or owned the property where he was residing.

Defendants' supplemental memorandum was filed on October 16, 2015, along with a declaration by Tipton and another exhibit. Plaintiffs' reply memorandum was filed on October 27, 2015, with three declarations and three additional exhibits. Plaintiffs also filed a supplemental declaration and exhibit on October 28, 2015. During the hearing on October 30, 2015, the Circuit Court orally granted the motion. The written order and a judgment were filed on November 25, 2015. This appeal followed.

## II.

We review a circuit court's grant of summary judgment de novo using the same standard applied by the circuit court. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawai'i 331, 338, 418 P.3d 1187, 1194 (2018).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

Id. at 342, 418 P.3d at 1198 (citations, quotations marks, and brackets omitted).

The moving party has the burden to establish that summary judgment is proper. Id. The movant may satisfy its initial burden of production by either (1) presenting evidence negating an element of the non-movant's claim, or (2) demonstrating that the non-movant will be unable to carry its burden of proof at trial. Where the movant attempts to meet its burden through the latter means, the movant must show not only that the non-movant has not placed proof in the record, but also that the non-movant will be unable to offer proof at trial. "Accordingly, in general, a summary judgment movant cannot merely point to the non-moving party's lack of evidence to support its initial burden of production if discovery has not concluded." Ralston v. Yim, 129 Hawaiʻi 46, 60-61, 292 P.3d 1276, 1290-91 (2013) (citations omitted).

"Once a summary judgment movant has satisfied its initial burden of producing support for its claim that there is no genuine issue of material fact, the party opposing summary judgment must demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Nozawa, 142 Hawaiʻi at 342, 418 P.3d at 1198 (citations, internal quotation marks, and brackets omitted). "The evidence must be viewed in the light most favorable to the non-moving party." Id. (citations and brackets omitted).

Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(e) (eff. 2000) requires that affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." HRCP Rule 56(e) does not preclude a party's affidavit from being self-serving, nor does it

require an affidavit to be corroborated by independent evidence. <u>Nozawa</u>, 142 Hawaiʻi at 333, 418 P.3d at 1189. However, "affidavits that state ultimate or conclusory facts cannot be used in support of or in opposition to a motion for summary judgment." <u>Id.</u> at 338, 418 P.3d at 1194 (citation omitted).

> [W]hen an assertion in an affidavit expresses an inference without setting forth the underlying facts on which the conclusion is based or states a conclusion that is not reasonably drawn from the underlying facts, the assertion is considered conclusory and cannot be utilized in support of or against a motion for summary judgment. On the other hand, an inference within an affidavit that is based on stated facts from which the conclusion may reasonably be drawn is not conclusory and may be used to support or oppose a motion for summary judgment.

<u>Id.</u> at 339, 418 P.3d at 1195 (citations omitted).

## III.

Plaintiffs' memorandum in opposition contained objections to some of Defendants' evidence, but no party ordered transcripts of the hearings for the record on appeal. We are unable to determine how the circuit court ruled on Plaintiffs' evidentiary objections. The record does not indicate that Defendants objected to any of Plaintiffs' proffered evidence; Defendants have waived the objections they make for the first time in their answering brief. <u>Price v. AIG Hawaiʻi Ins. Co.</u>, 107 Hawaiʻi 106, 112, 111 P.3d 1, 7 (2005) (holding that evidentiary challenges relating to summary judgment motions raised for the first time on appeal are waived). The evidence before the circuit court, viewed in the light most favorable to the Plaintiffs, showed the following:

Brown signed a contract titled "First Baptist Windward Caretaker Duties and Responsibilities." The contract is not dated, but other evidence in the record suggests that Brown began working for WCC on September 15, 2007. Brown agreed to perform certain tasks for WCC. WCC was to provide Brown with a cottage and utilities for Brown and his family, a salary, medical insurance, and a "cable package" including phone, Internet, and television (presumably for the cottage). The contract was renewable from year to year, subject to termination by either party upon 60 days notice.

4

A series of emails dated between August 9 and November 5, 2011, appear to indicate discord within WCC over a contemplated merger with One Love. None of the emails appear to have been written by, or addressed or copied to, Brown.

An unsigned letter dated September 9, 2011, addressed to deputy attorney general Kristie Cruz Chang (**DAG Chang**) indicates that WCC planned to dissolve and transfer its assets, including real property located at 1276 Kailua Road, to One Love, which intended to operate the property as a nondenominational Christian church. By letter dated September 27, 2011, DAG Chang informed WCC that the State had no objections to WCC's dissolution plan summarized in its letters dated September 22 and September 24, 2011.[2] However, by letter dated October 20, 2011, DAG Chang informed WCC that the State needed time to review additional information, would be requesting clarification from WCC on several issues, and revoked the State's September 27, 2011 approval of WCC's dissolution.

Minutes of a November 21, 2011 WCC ministry board meeting show a projection that WCC would be out of funds within two months, "continuation of the Browns" was discussed, and there was "genuine excitement among the community of Pastors about [WCC's] decision to turn [WCC's] property over to a thriving fellowship to minister to the Windward communities ~~of Kailua and Lanakai~~ [sic]."

By letter dated November 25, 2011, WCC advised Brown that it did not intend to budget for a custodian for 2012, anticipated closing down following the worship service on December 25, 2011, and would not renew his contract. Since WCC's facilities were also being rented by others, WCC asked Brown to remain as a custodian on a month-to-month basis effective January 2012. The letter was signed by Cherie Moncrief as "WCC Board Chairman [sic]."

However, by letter dated November 30, 2011, WCC informed Brown that he was being terminated because WCC believed that Brown or one of his family members had been stealing

---

[2] The letters to which DAG Chang's letter referred are not contained in the record on appeal.

information from a pastor's laptop computer. The letter was not signed, but the signature line contains the typed name of Pastor Brandon McCaughey.

On December 14, 2011, Brown submitted an application for State of Hawai'i unemployment benefits. Brown stated, "I was terminated from employment after working 4 yrs. at WCC. Allegations was [sic] made against my daughter and our entire family was put out of a job. I am still in schock [sic] and need to find a place to live."

WCC submitted a form, dated December 24, 2011, to the State of Hawai'i unemployment insurance division stating that Brown was terminated on November 30, 2011, because "Our church is in the process of shutting down/closing."

By letter dated December 24, 2011, WCC gave Brown and his family permission to remain in the caretaker cottage until further notice. Apparently nothing happened for two years. Then, by letter dated December 5, 2013, WCC's attorney notified Brown that he was to vacate the caretaker cottage no later than January 31, 2014.

On March 14, 2014, WCC filed a complaint for summary possession against Brown in the District Court of the First Circuit, Ko'olaupoko Division.[3] The summary possession case was tried on July 31, 2014. A judgment for possession in favor of WCC was filed on August 4, 2014, and a writ of possession was issued the same day. The writ of possession was served on Brown on September 5, 2014.

Plaintiffs' expert witness Dr. Robert Flores (**Dr. Flores**) wrote a report dated November 3, 2014. He opined that "the WCC Board of Directors has continually and willfully, with prior warning and knowledge, ignored their own Charter of Incorporation, the WCC Constitution and Bylaws, and the Hawaii

---

[3] Plaintiffs objected to admissibility of the complaint and its exhibits, including Brown's employment contract, the November 25, 2011 termination letter, the November 30, 2011 termination letter, the December 24, 2011 letter with permission to remain in the caretaker's cottage, and the December 5, 2013 eviction notice from WCC's counsel, on the grounds that the lawyer whose declaration purported to authenticate the exhibits did not represent WCC in the eviction case. In response, Defendants argued (among other things) that the circuit court should take judicial notice of the pleading pursuant to Hawaii Rules of Evidence (**HRE**) Rule 201 (1993).

Revised Statutes governing nonprofit corporations in their attempts over the last few years to dissolve WCC and concurrently transfer the assets of the church to One Love Ministries." He had reviewed several documents "that were authored by various members of the WCC Board and many of them were extremely demeaning and potentially slanderous . . . about the Browns and other 'dissidents' within the church who were opposed to and allegedly standing in the way of the WCC dissolution and transfer of assets." Dr. Flores reported that "Mr. Brown was one of the key leaders who tried to approach the WCC Board" about "actions to retain WCC as a church and not dissolve."

Business entity information from the State of Hawai'i Department of Commerce and Consumer Affairs shows that as of October 14, 2015, WCC was an active domestic nonprofit corporation whose officers were Cheri Moncrief, Robert Hamilton, and Rose Davis.

Tipton filed a declaration on October 16, 2015. Tipton's declaration states that he is the president of One Love; neither Tipton nor One Love ever employed Brown; neither Tipton nor One Love was involved with WCC's termination of Brown's employment; neither Tipton nor One Love ever had an ownership interest in WCC's property, including the caretaker cottage; neither Tipton nor One Love was involved in Brown's eviction; Tipton has never been an officer, board member, or agent of WCC; neither Tipton nor One Love ever received assets from WCC or assumed ownership over WCC assets; neither Tipton nor One Love ever used WCC assets without permission; once the Attorney General stopped the merger of WCC and One Love, no further action was taken by Tipton or One Love to merge or acquire any assets of WCC; and One Love has no ownership interest in WCC.

Brown signed a declaration on October 21, 2015, which was purportedly based on personal knowledge. It stated, in pertinent part:

> 3. Bob Hamilton controls Windward Christian Church ("WCC") which is where my work site was based.
>
> 4. Mr. Hamilton is also co-owner of KALO TV with business partner David (Waxer) Tipton, who owns and operates One Love Ministries ("OLM").

7

5. If you are employed by either of these entities then your employer is Bob Hamilton and David Tipton.

6. On September 24, 2011, Mr. Hamilton said that it does not matter who writes checks to attorneys, whether it be OLM or WCC. "It all comes out of the same pocket."

. . . .

13. On November 5, 2011, Mr. Hamilton directed board member, Cherie Moncrief that when she has developed an agenda ". . . it should include the termination of the Browns."

14. On November 21, 2011, WCC board members, Cherie Moncrief and Bob Hamilton met with Gill Berger and David Tipton to discuss the termination of my employment.

15. The agenda to terminate my employment was already adopted on November 5, 2011.

16. My employment at WCC was discussed with the owner of OLM on November 21, 2011.

. . . .

18. I have been working for either OLM or KALO-TV, which are all owned and operated by Bob Hamilton and David Tipton.

## IV.

## A.

Plaintiffs' first argument is that the circuit court erred in granting Defendants' motion for summary judgment "because there are at least genuine issues of material fact on the issue of expulsion of [One Love] and Tipton from the membership of [WCC] under HRS § 414D-89." The argument is confusing because there is no evidence in the record that One Love or Tipton were, or claimed to be, members of WCC. At any rate, the statute Plaintiffs cite is part of the Hawaii Nonprofit Corporations Act. It provides, in pertinent part:

> (a) No member may be expelled or suspended, and no membership or memberships in such corporations may be terminated or suspended except pursuant to a procedure that is fair and reasonable, and is carried out in good faith.

The statute has no relation to the issues raised by Defendants' motion for summary judgment. Plaintiffs' first argument is without merit.

8

**B.**

Plaintiffs next argue that the circuit court erred by granting summary judgment on Brown's claim under the Hawaiʻi Whistleblowers' Protection Act (**HWPA**). HRS § 378-62 (Supp. 2012) provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
> > (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
> >
> > (B) A contract executed by the State, a political subdivision of the State, or the United States,
>
> unless the employee knows that the report is false; or
>
> (2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

Brown contends that the HWPA defines "employer" to include the employer's agents, and argues that One Love and Tipton terminated his employment by WCC because he "reported or was about to report to the State of [Hawaiʻi] Attorney General's office that the proposed dissolution and overthrow of [WCC] was about to take place based upon the conduct of [One Love] and Tipton and others."

> HRS § 378-61 (1993) provides, in relevant part:
>
> As used in this part:
>
> . . . .
>
> "Employer" means a person who has one or more employees. Employer includes an agent of an employer or of the State or a political subdivision of the State.

The record shows that the letter dated November 25, 2011, and advising Brown that WCC would not renew his employment contract for 2012 was signed by Cherie Moncrief as "WCC Board Chairman

[sic]." The letter dated November 30, 2011, informing Brown that he was being terminated because he or one of his family members had been stealing information from a pastor's laptop computer contains the typed signature of WCC Pastor Brandon McCaughey. The record contains no evidence to controvert Tipton's declaration that neither Tipton nor One Love was involved with WCC's termination of Brown's employment. Moreover, the State revoked its approval of WCC's dissolution by letter dated October 20, 2011, but Brown and his family continued to live in WCC's caretaker cottage, with WCC's permission, until WCC evicted them in 2014. Even when viewed in the light most favorable to Brown, the evidence does not show that Defendants had anything to do with the termination of his employment by WCC. The Circuit Court did not err in granting summary judgment to Defendants on Brown's claim under the HWPA.[4]

## C.

Plaintiffs next contend that the Circuit Court erred by granting summary judgment on Brown's claim for intentional infliction of emotional distress (**IIED**).

> The elements of the tort of IIED are: 1) that the conduct allegedly causing the harm was intentional or reckless; 2) that the conduct was outrageous; and 3) that the conduct caused 4) extreme emotional distress to another. The term "outrageous" has been construed to mean without just cause or excuse and beyond all bounds of decency. Additionally, the question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may differ on that question it should be left to the jury.

Goran Pleho, LLC v. Lacy, 144 Hawai'i 224, 237, 439 P.3d 176, 189 (2019) (cleaned up).[5] The "outrageous" conduct of which Brown accuses Defendants was to cause "his removal as an employee and

---

[4] The fact that Brown's employer WCC is a co-plaintiff rather than a defendant in this case also indicates the lack of merit in Brown's HWPA claim.

[5] "Cleaned up" is a parenthetical designed to tell readers that extraneous material (e.g., internal brackets, ellipses, quotation marks, citations, footnote reference numbers, and changes in capitalization) has been removed from a quotation for readability, and that none of it matters for understanding the quotation or evaluating its weight. See Metzler, Jack, Cleaning Up Quotations, 18 J. App. Prac. & Process 143, 147, 154 (2017).

to evict him and his family from the cottage premises without proper authority and without just cause." As discussed above, even when viewed in the light most favorable to Brown, the record is devoid of evidence that Defendants had anything to do with Brown's termination or eviction by WCC. The circuit court did not err in granting summary judgment to Defendants on Brown's claim of IIED.[6]

**D.**

Plaintiffs' final argument is that the circuit court erred by granting summary judgment on Brown's claim for tortious interference with prospective economic advantage. Hawai'i recognizes the tort of interference with prospective business advantage:

> [T]he elements of intentional or tortious interference with prospective business advantage require the plaintiff to prove all of the following:
>
> (1)   the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff;
>
> (2)   knowledge of the relationship, advantage, or expectancy by the defendant;
>
> (3)   a purposeful intent to interfere with the relationship, advantage, or expectancy;
>
> (4)   legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and
>
> (5)   actual damages.

Field, Tr. of Estate of Aloha Sports Inc. v. Nat'l Collegiate Athletic Ass'n, 143 Hawai'i 362, 378, 431 P.3d 735, 751 (2018) (reformatted) (citation and emphasis omitted). The relationship with which Brown claims Defendants interfered is his employment relationship with WCC, a benefit of which was he and his family living in the caretaker cottage. Again, even when viewed in the light most favorable to Brown, the record is devoid of evidence that Defendants had anything to do with Brown's termination or

---

[6]     WCC, being a corporation, cannot suffer emotional distress. Goran Pleho, LLC, 144 Hawai'i at 238 n.9, 439 P.3d at 190 n.9.

eviction by WCC.  The circuit court did not err in granting summary judgment to Defendants on Brown's claim of tortious interference with prospective economic advantage.

## V.

For the foregoing reasons, the Judgment entered by the circuit court on November 25, 2015, is affirmed.

DATED:  Honolulu, Hawaiʻi, August 5, 2019.

On the briefs:

R. Steven Geshell,
for Plaintiffs-Appellants.

Paul T. Yamamura,
Wesley D. Shimazu,
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge

12